I'm Robert Stone, appearing on behalf of defendant appellate Keith Huling. As trial counsel and in trying to prepare for this argument, it was easy for me to become bogged down in the process and to lose sight of what trial counsel was actually trying to do in this matter. In trying to prepare, I had hoped to begin by focusing on what trial counsel was trying to do and then hopefully to convince the court that we should have been able to get where we were trying to go. This obviously has more to do with the warrant, the search warrant, than it does with whether the CI was or was not. When trial counsel looked at the search warrant, it looked to us like largely a group of innocent facts that were either in plain on a public road, past the address, or would have been readily available as public knowledge in the community of Grants Pass. There were three things that stuck out. The first, of course, was the statement by the unidentified and unwitting informant that there were stolen truck parts on the premises. The second, and that was made to the confidential informant, the second was the CI's statement in Detective Genesta's affidavit that he was familiar with a 1989 or 1999 green Dodge truck. It doesn't say how he was familiar. The third thing that stood out was, of course, Detective Genesta's records check, which produced this 1999, I believe. What we couldn't see and what we believed was missing was some way to connect these things. Without them, all we had was the untested statement of an unidentified witness. So was the truck that the CI was familiar with identified as David Marcus's truck that showed up on the records check? It seemed to us that it would have been easy for Detective Genesta, and having been experienced in writing affidavits and connecting the dots, to say either the truck that the CI told me that he was familiar with was the same truck that I came up with in this records check that showed that David Marcus had his truck stolen, or that Detective Genesta could have gone and was easily accessible. Mr. Marcus owned and operated the local Napa Auto Parts store. Detective Genesta knew that. He was right there. It would have been easy for him to take the photograph that he took of the truck bed down to David Marcus and say, does this look like your truck, a part of your truck? So when we set out to try to figure out why those dots weren't connected, we did what we thought we could. First, we went and talked to David Marcus. We sent an investigator there who showed Mr. Marcus a picture of the truck bed. And Mr. Marcus's statement was that he couldn't identify it. Not only could he not identify it as his truck, he couldn't even say it was consistent with his truck bed because the truck bed, the picture of the truck bed... Well, that's not really surprising, is it? Because the truck at this point is something. Well, yes, except that he specifically, and this was made in the offer of proof, Mr. Marcus said that doesn't look like my truck bed because my truck bed didn't have... there was a piece of silver chrome on the truck bed that Mr. Marcus said was not present on his. So not only could he not identify it, he couldn't say that it law enforcement officers can do. There's lots of other steps that could make their level of suspicion go from a reasonable basis for believing crime is taking place to being sure that one is. That's not exactly the question, is it? Well, it's true that they're not required to turn over every rock and every stone and try to gather every piece of information, but where the information was readily available and critical to the affidavit, meaning the district court judge in deciding there was probable cause himself said that there wasn't a lot there. So every piece here was a critical piece. Yeah, which brings me to, I guess maybe the key question here is, so what if there were enough there for the officers in good faith to rely upon the issuance of the warrant? Why do we need to worry about... And that's the difference I think between a probable cause finding and what we were asking for was a Frank's hearing, an evidentiary hearing to try to determine whether Officer Ginesta, when he wrote the affidavit, omitted, recklessly omitted, material information and by doing so would have tended to influence the judge or misled the judge and that was our argument and that was why we wanted the Frank's hearing and that was one of the ways that we could get to that information was through the CI or at least through the circumstances of the CI's information. We weren't necessarily even looking for the CI's identity, particularly after the first hearing when when the judge denied our motion to disclose. Well, you know, you add it all up and what you've got is information that somebody who knew three people who work at Highland, which was confirmed, at least with respect, that he was associated with Highland. There was a stolen pickup on the premises and it was confirmed that at least a truck that matched in general terms the description that Gineski saw had in fact been stolen and you have a confidential informant whose veracity was at least not impugned after having taken a polygraph examination and you've got a lot of a lot of facts which regardless of whether they may or may not have amounted to probable cause, my question is why don't they add up to enough so that the Gineski could, in good faith, rely upon the advice given to him by the district attorney and by the warrant? Because the good faith exception doesn't apply if Gineska recklessly omitted material facts. Well, what did he omit that would have made any difference in what I've just said? He omitted any information that would have connected the green truck that the C.I. said he was familiar with, with David Marcus's truck. He also omitted information that he could have... What information would there have been had he said what could have been known for Marcus other than Marcus can't say whether it was or wasn't his truck, but he did confirm that a green Dodge pickup had been turned up. But the truck bed that he showed Marcus later wasn't his truck bed. It was a different truck bed. So the fact that there was a green truck that was stolen somewhere in Grants Pass two years ago, unless you could somehow connect it to the truck parts that Gineska saw on the property, seems at least misleading, and particularly where you don't have any connection between it... The court has the sealed testimony of the camera hearing. If the C.I. was correctly identified and he told Judge Hogan, yes, the truck that I was familiar with was one that was stolen from the Napa Auto Parts Store two years ago, then that probably connects the dots and we're probably dead in the water. But if he didn't say that, if there was a difference, if he was familiar with some green truck that doesn't have anything to do with David Marcus's truck, or he was only familiar with them from having seen parts of the truck, having seen the parts on the property, then including the information, or at least not investigating, or not asking David Marcus, is that your truck, is a reckless omission, because Gineska clearly implies that the green truck that was stolen from David Marcus is the same one that's on the property. I'm down to a minute. I'd like to save a minute if I could. Go on. Good morning. May it please the Court, my name is Doug Fong and I represent the government in this matter. It's not the greatest search warrant. It requires a fair probability that criminal evidence would exist at the location of the search warrant. The probable cause of the search warrant does not depend upon what Detective Gineska failed to do. The probable cause of the warrant stands on its own within the four corners of the warrant. It would be nice to say that maybe he could have done more in that case, but particularly when you look at United States v. Ward, the real issue here is not what more could Detective Gineska have done. The real issue is, is there a probable cause within the four corners of this warrant? When you look at the case that you cited in our brief, United States v. Henderson, about the red stolen Peterbilt truck, the defense is looking for some kind of absolute connection between Mr. Marcus' truck and the truck that was found, or at least that was seen at the location. There's no evidence in the record that this truck was not, after the fact, was not David Marcus' truck. If you look at the analysis of the thing about the chrome trim, there's no chrome trim on the truck bed of the pictures that Detective Gineska took. When you look at the interview that the defense did with Mr. Marcus, that was, I think it was March 2005, but it was a year after the search had occurred. When you look at the materials in the record where the detective interviewed Mr. Marcus right afterwards, Mr. Marcus said, right after the search, Mr. Marcus said, the truck bed color is consistent with what was stolen from me. The worn winch looks like the same one that was stolen from me. And besides, they've been customers at the Napa Auto Parts store. These obviously are things after the fact, but they're raised in the context of this defendant's motion for a frank sharing based upon Detective Gineska's failure to investigate. But the bottom line is the warrant stands on its own within the four corners. When you compare this case with United States v. Henderson about the Peterbilt truck, we have more facts in this case than they did in United States v. Henderson. All Henderson had was a victim saying, I had a red Peterbilt truck stolen, and an employer saying, well, my employee saw a red Peterbilt truck in the defendant's shed. And that was basically it. We certainly have more than that in this case. But even if your honors look at the warrant and say, well, look, this is marginal or this is doubtful, those types of cases are decided with reference to the issue naturally. In doubtful or marginal cases, preference should be given to the warrant. Particularly in this case, where you have an issuing magistrate in a community that's small. This is not Portland, where you have millions of people, or Seattle. This is the small town of Transpass with the issuing magistrate there looking at all the facts and knowing what type of community. We suggest to you that the standard is to look at what a reasonable magistrate in that magistrate's position in Los Angeles or Seattle. And in those circumstances, deference should be given to his position in that community and his judgment. Then even if you have doubts even about the probable cause, even after that, your honors, then you look to the good faith exception, because that's what we have in this case. The cases that we compared, I think it was Clark and Huggins. Those depended on anonymous information. At least in this case, we don't have an anonymous informant. He might have started out as anonymous, but he eventually identified himself, wanted to be confidential, but was subject to a polygraph examination. He was told specifically, you could be prosecuted. So those are at least an issue of reliability. And when you look at the case totality of the circumstances in this, even though this informant may not have been proven in the past, he certainly has a basis for his statements in that he's familiar with the person, he's familiar with the location, he knows the unwitting informant. The unwitting informant also has a basis for his information in that the unwitting informant is also familiar with the subject. When you put all of that together, and then place it on top of the accuracy in the map, the corroboration by Detective Ginessa, things being in the locations that the informant said he was, and then detectives at least investigation that not just a similar but an identical type of truck was stolen, was stolen a year and a half ago in this small community. When you step back and look at it all together, that's at least much more evidence than what was presented in Huggins and what was presented in Clark to justify the good faith exception applying here. And Your Honor shouldn't ignore the fact also that Detective Ginessa, in drafting this search warrant app, they consulted, I think in the record it was Deputy District Attorney Scott Tister of the Josephine County District Attorney's Office. That's also a factor that Your Honor should consider in this case. With respect to the defendant's motion for Frank's hearing, this was an interesting posture that the government was in because the defendant on the one hand says, we've identified the informant, but on the other hand they say, well we want to know who this informant is anyway. We want someone to verify that we're correct. And that's not what the law says. It's very limited in the circumstances under which an informant's identity can and should be disclosed are very limited. But suffice it is to say, the only context that this came up in really in the end was the motion for Frank's hearing. And curiously enough, Judge Hogan found, number one, that the defense hadn't made the requisite joint for Frank's hearing, but he nonetheless was going to allow them to call Ralph Champey to testify and the term he used, just as a prophylactic matter. Now I suspect maybe that approach is certainly within the trial court's discretion, but as you can tell from the record, we objected to that. And at that point in time, that's when we agreed, well look, even though an in-camera hearing is not warranted in this case, we're willing to do that anyway because of the risk of disclosing the informant's identity if Mr. Champey took the stand. And we're not saying that he is or he isn't, but that's why we had the in-camera hearing. That was really the only purpose for the in-camera hearing, was to protect the informant's identity. At this stage, the things that the defense complained about, wanting the informant's identity disclosed and wanting an in-camera hearing, they got in the end, they got exactly that. They got exactly what they asked for on their in-camera hearing. They may have wanted to have been there at the time, and there is a procedure where the defense counsel could be there and yet be ordered not to disclose the proceedings, but that's discretionary within the judge. I think United States v. Pritchett talks about that. And the real question is, did the judge abuse his discretion in conducting this in-camera hearing just as the defense requested and excluding the defender from that? If your honor reads the transcript, basically it's just the testimony of the defense. Your honors will see that there was no abuse of discretion. That's really all I have, unless your honor has any questions. Thank you. Anything else, your honor? Mr. Stone? I just wanted to provide a quick look over. First of all, with regard to the truck down picture, the author of proof was that this was the same truck bed, the picture of the same truck bed to David Marcus that was in the search warrant. That truck bed clearly had a piece of chrome on it that David Marcus said was not on his truck bill. Secondly, with regard to whether we're confined to the forecourt or to the affidavit, I think that's the purpose of the Franks hearing, is to go beyond that to figure out whether the warrant was misplaced or whether there were omissions. That's omissions of information that would be outside of the forecourts of the warrant. That was what we were trying to do. With regard to the polygraph as corroborating the CI's information, the only thing that the polygraph, we asked for the polygraph result and didn't get it. The only thing that corroborates is the fact that an unidentified informant told him that there were stolen truck parts on the property. And we'll next hear an argument in Brown v. Hill. Judge Nelson, would you mind muting yourself when you're not talking? Thank you. Thank you. Thank you.
judges: Rymer, Nelson, Paez